# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) CASTLE ROCK HEF, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> (1) CORBA, INC., ) <br> ) <br> Defendant. ) | Case No. CIV-19-924-G <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Castle Rock HEF, LLC, d/b/a White Buffalo Hemp Company ("White Buffalo" or "Plaintiff"), for its Complaint against the above-named Defendant, alleges and states as follows:

### Parties, Jurisdiction, and Venue

1. White Buffalo is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma. Its members are domiciled in Oklahoma and Texas.

2. Defendant CORBA, Inc. ("CORBA" or "Defendant") is an Oregon corporation with its principal place of business in Tigard, Oregon.

3. The Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1332 on the basis that complete diversity exists between the parties because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. This Court has jurisdiction over the Defendant in this lawsuit because the Defendant reached out to the forum state repeatedly throughout the course of the parties'

1

dealings and thus has sufficient minimum contacts with the forum state, the present dispute arises out of the Defendant's contacts with the forum state, and the exercise of jurisdiction over it does not offend traditional notions of fair play and substantial justice.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Facts

6. White Buffalo is a vertically-integrated hemp company that covers all aspects of the hemp industry from seed acquisition to the extraction and/or manufacture of hemp-related products.

7. CORBA is a private-label retailer of hemp-based products.

8. In or around February 2019, Defendant was selected to supply hemp-based CBD products (the "Product") to CVS Pharmacy, Inc. ("CVS") nationally. Specifically, Defendant would need to provide CVS with the following four products:

    a. 200 milligram peppermint roll-on hemp extract;

    b. 200 milligram lavender/tea tree roll-on hemp extract;

    c. 300 milligram peppermint roll-on hemp extract; and

    d. 300 milligram lavender/tea tree roll-on hemp extract.[1]

9. However, Defendant was unable to produce sufficient Product to meet CVS's requirements. Accordingly, in or around February 2019, Defendant entered into a business relationship with Plaintiff. Under this relationship, Plaintiff was to serve as Defendant's

---

[1] Each individual Product was to be shipped in a 12-count package. Thus, one package contained 12 "units."

sole supplier of Product to fulfill Defendant's obligations to CVS. Plaintiff was to specially manufacture the Product in accordance with Defendant's needs and specifications. Specifically, Defendant required that Plaintiff develop the Product according to its formulation and place the Product in certain bottles with certain closures together with custom labeling and display cartons with the Defendant's artwork. In return for doing so, Defendant was to pay Plaintiff for the Product together with a 12% interest fee in return for Plaintiff providing the necessary capital for development of the Product and taking out a $500,000 loan in order to do so.

10. Because the exact number of units Defendant would require was to be determined over the course of dealing, Plaintiff agreed to produce what Defendant would require. However, preliminary projections showed that Defendant would require as many as 1,247,200 units of Product during the 2019 calendar year, for which Plaintiff expected to get paid up to $8,949,978.88. Plaintiff placed its trust and confidence in Defendant to provide accurate numbers regarding both its projected need and the total quantity of Product it would require. After all, all communications between the parties were direct and never involved intermediaries such as distributors.

11. On February 28, 2019, Defendant asked Plaintiff to fulfill a special order entitled the "Emerson/GEODIS Refill Shipment," which required 20,400 units to be shipped directly to Emerson, an affiliate of CVS for purposes of CVS' sale of hemp-based products. However, Plaintiff only had 8,537 units of Product ready to ship at that time and accordingly shipped those units to the Defendant with the understanding that Plaintiff would provide the additional 11,863 units as soon as they were ready for shipment.

12. Plaintiff, together with a non-party partner company, successfully produced and delivered additional units of Product to Defendant in response to Defendant's requests on numerous occasions in March 2019. These orders were provided in response to and in accordance with various text messages and phone calls. Nonetheless, months after the actual delivery took place, the parties retroactively created corresponding invoices which included the invoice number, amount, delivery date, and an itemization of the Product actually delivered as follows:

| Invoice | Invoice Amount | Delivery Date | Order Description (Cases) |
|---|---|---|---|
| 1115 | $1,080.00 | March 5, 2019 | 2 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 3 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| | | | 2 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 3 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1116 | $9,936.00 | March 7, 2019 | 23 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 23 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| | | | 23 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 23 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1117 | $2,910.00 | March 8, 2019 | 7 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 7 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| | | | 6 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 7 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1118 | $10,368.00 | March 7, 2019 | 24 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |

|  |  |  | 24 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
|---|---|---|---|
|  |  |  | 24 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 24 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1119 | $1,932.00 | March 5, 2019 | 5 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 5 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 4 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 4 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1120 | $14,688.00 | March 7, 2019 | 34 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 34 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 34 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 34 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1121 | $28,944.00 | March 7, 2019 | 67 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 67 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 67 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 67 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1122 | $14,688.00 | March 12, 2019 | 34 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 34 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 34 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 34 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1123 | $22,032.00 | March 12, 2019 | 51 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
|  |  |  | 51 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |

| | | | |
|---|---|---|---|
| | | | 51 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 51 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1124 | $15,552.00 | March 5, 2019 | 36 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 36 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| | | | 36 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 36 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1125 | $43,200.00 | March 12, 2019 | 100 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 100 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| | | | 100 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 100 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1131 | $1,524.00 | March 12, 2019 | 3 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 3 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| | | | 4 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 4 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1132 | $6,354.00 | March 12, 2019 | 16 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 15 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| | | | 13 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 15 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| 1133 | $32,640.00 | March 14, 2019 | 160 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 160 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |

| | | | |
|---|---|---|---|
| 1134[2] | $33,286.48 | March 26, 2019 | 109 - 200mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 106 - 200mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| | | | 247 - 300mg Lavender/Tea Tree Roll-On Hemp Extract (12 Units Each) |
| | | | 247 - 300mg Peppermint Roll-On Hemp Extract (12 Units Each) |
| **TOTAL** | $239,134.48 | | 31,596 Units |

13.     Defendant paid Plaintiff $239,134.48, the total cost of the Product actually delivered; however, Defendant did not pay—and still has not paid—the 12% interest charge of $28,696.14 arising from the $239,134.48 of Product actually delivered, or the additional $5,423.42 interest charge associated with the pre-discount amount of Invoice No. 1134. Thus, the total amount of interest due and owing is $34,119.56.

14.     Throughout the course of the parties' dealings, Defendant repeatedly insisted over text messages, emails, and phone calls, that Plaintiff produce as many units of Product as possible so that Defendant could meet its future obligations to CVS. Plaintiff took multiple actions in reliance on Defendant's repeated assertions, including ordering bottles for the additional Product and producing a total of 53,086 units of Product—far less than Defendant's projected requirements for 2019—the overwhelming majority of which were complete with Defendant's labeling specifications, to meet Defendant's purported need.

15.     Before Plaintiff shipped the 53,086 units of Product to Defendant, Plaintiff learned that Defendant was no longer willing to purchase Plaintiff's Product. Accordingly,

---

[2] This invoice was for the Emerson/GEODIS order referenced above, under which Plaintiff delivered 8,508 units of Product with an additional 11,892 units of Product to be delivered at a later date in order to fulfill the 20,400 total units requested. Further, before various discounts were assessed, this invoice was for the total amount of $78,481.65.

Plaintiff did not ship the 53,086 units of Product to Defendant thus avoiding additional, and potentially unnecessary, shipping costs.

### Count I: Breach of Contract – Failure to Pay Interest

16. Plaintiff incorporates the allegations set forth above as if fully stated herein.

17. Pursuant to the parties' agreement, under which Defendant agreed to pay a 12% interest charge in addition to the price of Product actually delivered in exchange for Plaintiff specially manufacturing and delivering the Product, Plaintiff delivered 31,596 units of Product to Defendant, as set forth in Paragraph 13, which Defendant accepted and for which Defendant received payment from CVS.

18. Although Defendant was contractually obligated to do so, Defendant breached the terms of its agreement with Plaintiff by only paying Plaintiff $239,134.48 (the price of the Product actually delivered) and not the additional $34,119.56 due and owing (12% interest charge).

19. Plaintiff has been damaged in the amount of $34,119.56 as the direct result of Defendant's breach.

### Contract II: Breach of Contract – Failure to Pay for Additional Units

20. Plaintiff incorporates the allegations set forth above as if fully stated herein.

21. Through the parties' course of dealing, Plaintiff and Defendant entered into a contract for the special manufacture of Product in accordance with the Defendant's specific needs and quantity requirements.

22. Under the parties' agreement, Plaintiff expected to produce all additional units that Defendant would require, which—for the 2019 calendar year alone based upon

Defendant's representations—was expected to be as many as 1,247,200 units of Product for which Plaintiff would be paid as much as $8,949,978.88.

23. Plaintiff produced an additional 53,086 units in accordance with its obligations under the contract, 11,892 of which were for the Emerson/GEODIS Refill Shipment.

24. On or around May 6, 2019, Plaintiff learned indirectly that Defendant no longer intended to honor its obligations under its contract with Plaintiff, which required Defendant to purchase additional Product from Plaintiff. Accordingly, Defendant anticipatorily repudiated the contract by taking actions inconsistent with honoring its obligations thereunder.

25. As a result of Defendant's breach by anticipatory repudiation, Plaintiff has suffered damages in an amount to be determined at trial, but which includes either:

   a. the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages, but less expenses saved in consequence of the buyer's breach; or

   b. the profit (including reasonable overhead) which Plaintiff would have made from full performance by Defendant, together with incidental damages and due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

**Count III: Promissory Estoppel – Manufacture of the Additional Units**

26. Plaintiff incorporates the allegations set forth above as if fully stated herein.

27. Alternatively, Plaintiff is entitled to recover damages under a promissory estoppel theory.

28. Defendant promised to purchase in excess of 60,000 units of Product which it required to fulfill its obligations to CVS as set forth in various documents and communications.

29. Because Defendant, an established member of the hemp and CBD industry, could not fulfill its obligations to CVS in the absence of Plaintiff's custom manufacture of Defendant's required Product, it was both foreseeable that Plaintiff would rely, and reasonable for Plaintiff to in fact rely, on Defendant's promise.

30. Plaintiff expended significant financial resources in reliance on Plaintiff's promise and specially manufactured 53,086 units of Product, the overwhelming majority of which are and have been ready to ship to Defendant and all of which are of no utility to other purchasers in their present condition; accordingly, hardship or unfairness can be avoided only by the promise's enforcement.

31. As a result of Plaintiff's detrimental reliance on Defendant's promise, Plaintiff has been harmed in an amount to be determined at trial.

### Count IV: Breach of Fiduciary Duty

32. Plaintiff incorporates the allegations set forth above as if fully stated herein.

33. A fiduciary relationship existed between Plaintiff and Defendant on the basis that Plaintiff placed its trust and confidence in Defendant's presumed integrity and fidelity.

34. In the alternative, a fiduciary relationship existed between Plaintiff and Defendant on the basis that the parties were members of a joint venture because:

      a.      Plaintiff and Defendant agreed that Plaintiff would provide the necessary capital and manufacture the Product, and Defendant would provide the joint venture with its valuable right to sell Product to CVS;

      b.      Plaintiff and Defendant had an agreement regarding the sharing of profits and losses in accordance with each party's respective role in the joint venture; and

      c.      Plaintiff and Defendant took actions which showed cooperation in manufacturing the Product for the purpose of selling the Product to CVS.

35.    Defendant owed Plaintiff fiduciary duties to act in good faith and in the best interests of the parties' joint venture. These duties include the duties to:

      a.      faithfully and fully disclose information;

      b.      avoid disrupting or thwarting the aims of the joint venture;

      c.      avoid actions which are motivated by personal gain and at the expense of the joint venture;

      d.      cooperate with Plaintiff in order to achieve the joint venture's business goals;

      e.      inform Plaintiff of important decisions of interest to the joint venture; and

      f.      act with integrity.

36.    Defendant breached these duties by, among other things, misleading Plaintiff by causing it to believe that it would serve as Defendant's sole supplier of Product in order to fulfill Defendant's obligations to CVS before completely refusing to use or pay for any

of the 53,086 units of Product actually manufactured, or any additional units of Product as necessary to fulfill its future obligations to CVS.

37. Defendant's breaches have caused Plaintiff damages in an amount to be determined at trial.

### Count V: False Representation

38. Plaintiff incorporates the allegations set forth above as if fully stated herein.

39. On or around February 17, 2019, Defendant told Plaintiff, among other things, that Plaintiff would be the sole supplier of Product for Defendant to fulfill its obligations to CVS. Defendant also represented that it had a market to sell the Product in the form of its relationship with CVS, as well as potentially other nationwide retailers.

40. Because Defendant ultimately refused to use Plaintiff's Product in order to fulfill its obligations to CVS and/or purchased Product from other suppliers, Defendant's material representations were false.

41. Defendant knew or should have known at the time it represented to Plaintiff that Plaintiff would be the sole supplier of Product for Defendant to fulfill its obligations to CVS that this statement was false.

42. Defendant intended for Plaintiff to manufacture Product in accordance with Defendant's unique needs and specifications.

43. Plaintiff acted in reliance on Defendant's material representations by, among other things, taking actions to develop—and actually developing—Product.

43. Plaintiff has suffered damages as a direct result of Defendant's material misrepresentations in an amount to be determined at trial.

**Count VI: Breach of the Duty of Good Faith and Fair Dealing**

44. Plaintiff incorporates the allegations set forth above as if fully stated herein.

45. By making the fraudulent and other misrepresentations set forth above, Defendant breached its common law duty of good faith and fair dealing which is implied in every contract.

46. At the time of contracting and thereafter, Plaintiff reasonably expected Defendant would purchase all of the Product it would require from Plaintiff.

47. Defendant frustrated the fruits of that bargain by refusing to purchase all the Product it needed from Plaintiff.

48. Plaintiff did not anticipate, at the time of contract, that Defendant would commit such fraudulent acts in violation of the duties owed to Plaintiff.

49. Defendant acted to further its own economic self-interest at the expense and to the detriment of Plaintiff.

50. Defendant's breach has caused Plaintiff damages in an amount to be determined at trial.

**Request for Relief**

Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant on all counts as follows:

A. For actual, consequential, and other damages in an amount be proven at trial but in excess of $75,000;

B. For pre- and post-judgment interest on such damages;

C. For costs and attorney fees; and

D.      For such other relief to which the Court determines Plaintiff is entitled.

                Respectfully submitted,

                */s/ Matthew D. Craig*
                PATRICK R. PEARCE, JR., OBA #18802
                STEPHEN C. GELNAR, OBA #18381
                MATTHEW D. CRAIG, OBA #33489
                **RYAN WHALEY COLDIRON JANTZEN**
                    **PETERS & WEBBER PLLC**
                900 Robinson Renaissance
                119 North Robinson
                Oklahoma City, OK 73102
                (405) 239-6040
                (405) 239-6766 FAX
                rpearce@ryanwhaley.com
                sgelnar@ryanwhaley.com
                mcraig@ryanwhaley.com